

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00290-CV

APPALOOSA DEVELOPMENT, LP
AND LUBBOCK WATER RAMPAGE, LLC, APPELLANTS

V.

CITY OF LUBBOCK, TEXAS, APPELLEE

On Appeal from the 99th District Court of Lubbock County, Texas
Trial Court No. 2011-559,102, Honorable William C. Sowder, Presiding

August 11, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellants, Appaloosa Development, LP, and Lubbock Water Rampage, LLC (collectively, "Appaloosa"), appeal a final judgment following a bench trial in which the trial court concluded that Appaloosa take nothing by their inverse condemnation suit. We will affirm.

Factual and Procedural Background

Appaloosa Development, LP, is a Texas limited partnership that was formed for the primary purpose of buying land for commercial development. The primary owners of Appaloosa are John Michael Freyburger and his wife.

In 2009, Appaloosa became interested in purchasing a thirteen acre tract of land (the property) in Lubbock. Lubbock Water Rampage is a water park that occupies approximately five to six acres of the land with the remainder of the land being undeveloped. Appaloosa's interest in the land was to develop the undeveloped portion of the land with commercial properties. When the property was annexed into the city in 1999, it was designated a "transition district," which is not a zoning classification. As a transition district, the only acceptable use of the property was for single-family residences.[1] However, based on his due diligence review of the potential purchase of the property, Freyburger determined that the undeveloped property was likely to be zoned as commercial property. On this basis, Appaloosa purchased the property on April 29, 2009, for $500,000. Appaloosa then paid $200,000 to West Texas & Lubbock Railroad, Inc. for a permanent railroad crossing to allow access to the property across the railroad tracks.

In late July or early August 2009, Appaloosa filed an application to have the property zoned. The application was filed with the City's Planning and Zoning Commission seeking classification of the property as "Interstate Highway Commercial District" (IHC) property, which would allow commercial development of the property.

---

[1] Since the water park was already operating when the property was annexed into the city, it is classified as a legal nonconforming use of the property.

Appaloosa's requested zoning classification was supported by the city's Planning Director.

In September of 2009, the City's Planning and Zoning Commission heard the application and approved it. The Commission's approval led to the application being considered by the City Council. Prior to consideration by the City Council, eight written objections to the proposed IHC classification were received by the City Council. The objections to the proposed classification came from neighboring residents that objected on the bases of increased noise, traffic, and crime in their neighborhood; decreased property values; and ill effects from increased urbanization. At the conclusion of a contentious meeting, the City Council unanimously voted to deny the application.

After the City Council denied Appaloosa's application for classification of the property as IHC property, Appaloosa brought suit against the City for inverse condemnation. After a bench trial, the trial court entered a take-nothing judgment against Appaloosa. Appaloosa filed a request for findings of fact and conclusions of law and such were entered by the trial court. Appaloosa filed a motion for new trial that was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). Appaloosa timely filed notice of appeal.

By its appeal, Appaloosa presents four issues. Appaloosa's first issue contends that the trial court erred when it failed to make sufficient findings to support its conclusion that the City did not unlawfully take or damage the property. By its second issue, Appaloosa contends that the trial court erred when it found and concluded that a regulatory taking cannot occur when the City denies a zoning request. Appaloosa's

third issue contends that the trial court erred when it failed to conclude that the City's refusal to approve commercial zoning for the previously unzoned property resulted in an unlawful taking of the property. By its fourth issue, Appaloosa contends that the evidence was factually insufficient to establish that the denial of Appaloosa's zoning request advanced a legitimate governmental interest. To properly address each of the issues raised by Appaloosa, we will analyze each within our analysis of the takings claims brought forward by Appaloosa on appeal.

## Appaloosa's Claims

By its suit, Appaloosa alleged three separate theories to support its claim of inverse condemnation. The first of these theories is that the City's denial of Appaloosa's zoning request constituted a regulatory taking pursuant to *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). Appaloosa's second theory is that the City had an improper or self-interested motive in denying the zoning request, which was made actionable by *State v. Biggar*, 873 S.W.2d 11 (Tex. 1994). Appaloosa's third theory, which is not argued in this appeal, is that the City's zoning decision removed all of the value of the undeveloped portion of the property. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).

## *Penn Central* Claims

When assessing whether a regulatory taking has occurred, we look at the three *Penn Central* factors: (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with investment-backed expectations, and

4

(3) the character of the governmental action.[2]  *Penn Cent.*, 438 U.S. at 124; *Sheffield Dev. Co. v. City of Glenn Heights,* 140 S.W.3d 660, 672 (Tex. 2004).  In making this assessment, we are directed to look at the property as a whole, rather than in discrete segments.  *City of Houston v. Trail Enters., Inc.*, 377 S.W.3d 873, 879 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing *Penn Cent.*, 438 U.S. at 130-31).

Economic Impact of the Regulation

As to the economic impact factor, Appaloosa contends that the trial court's findings are in conflict because the trial court found that the denial of the zoning request did not negatively affect the value of the property while also finding that the value of the property would have increased if the zoning request would have been granted.  However, these findings are not in conflict.  The trial court found that the City's denial of Appaloosa's requested zoning classification had no effect on the value of the property since the property could continue to be used for the same purposes after the denial as it could have been used at the time that Appaloosa purchased the property.  The economic impact of the regulation factor simply compares the value that has been taken from the property with the value that remains in the property.  *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 935-36 (Tex. 1998) (citing *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987)).  In

---

[2] It appears that the character of the governmental action factor has been removed from the takings analysis by the Supreme Court's decision in *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 543, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005).  While the Texas Supreme Court has acknowledged *Lingle* in *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 478 n.21 (Tex. 2012), it has not specifically addressed the effect of *Lingle* on Texas takings jurisprudence.  S*ee Rowlett/2000, Ltd. v. City of Rowlett*, 231 S.W.3d 587, 594-95 (Tex. App.—Dallas 2007, no pet.) (noting that, in light of *Lingle*, the continued validity of the character of governmental action factor "may be subject to further consideration by the Texas Supreme Court.").  Because the continuing relevance of this factor is unclear, in an abundance of precaution, we will address the factor in our analysis.

this case, the trial court found that there was no value taken from the property by the City's denial of Appaloosa's zoning application. These findings are supported by evidence in the record. The loss of anticipated gains or potential future profits should not generally be considered in the analysis of this factor. *Id.* at 936. Essentially, Appaloosa's contention is that the trial court erred by not finding the loss of anticipated profit resulting from the denial of the application.[3] However, such lost profits are not a proper consideration. *See Mayhew*, 964 S.W.2d at 936.

Appaloosa cites cases in support of its proposition that a regulatory taking can occur when the government refuses to rezone property, grant a variance, or allow development. While a regulatory taking can occur under these circumstances, none of these cited cases support Appaloosa's contention in the present appeal. In both *Mayhew* and *Taub v. City of Deer Park*, the Texas Supreme Court found that the city's refusal to rezone property did not constitute a taking. *See Mayhew*, 964 S.W.2d at 938-39; *Taub*, 882 S.W.2d 824, 826 (Tex. 1994). In *Westgate, Ltd. v. State*, the Court found that future regulation, specifically plans to condemn property, did not constitute a taking even though the articulated plans to regulate in the future affected the current value of the claimant's property. *See* 843 S.W.2d 448, 452-53 (Tex. 1992). Finally, while a regulatory taking was actually found in *City of Sherman v. Wayne*, it was only found because the regulation in that case constituted the "'extraordinary circumstance' when no economically viable use is permitted." 266 S.W.3d 34, 44 (Tex. App.—Dallas 2008, no pet.) (quoting *Rowlett/2000*, 231 S.W.3d at 592). As previously mentioned,

---

[3] Appaloosa cites *Sheffield* for the proposition that lost profits are a relevant factor to consider in assessing the value and the severity of the economic impact rezoning had on the property. *See* 140 S.W.3d at 677. While this is true, profits lost due to an unfavorable rezoning and anticipated gains that would have been derived by a favorable zoning are not the same consideration.

Appaloosa does not present an issue challenging the trial court's ruling on Appaloosa's no-value theory.

<u>Investment-Backed Expectations</u>

The existing zoning of the property at the time it was acquired is the primary factor in determining whether the regulation interferes with investment-backed expectations. *Mayhew*, 964 S.W.2d at 937-38. As in the analysis above, the City's denial of Appaloosa's zoning application had no effect on the permitted uses of the property and, therefore, the property lost no value. The only loss that occurred was the loss of anticipated gains and future profits that would have been derived if the City had approved Appaloosa's zoning application. In fact, the evidence in this case establishes that, due to the continued growth in the profitability of the water park, the property has actually increased in value since the City denied Appaloosa's application.

Appaloosa contends that because the trial court failed to make any findings relating to investment-backed expectations, even though such findings were specifically requested by Appaloosa, Appaloosa is prevented from properly presenting its case to this Court. While the trial court's findings did not expressly refer to "investment-backed expectations," the trial court included a number of findings that relate to this factor, including the increasing net income and value of the property since Appaloosa purchased the property, and the lack of any detrimental effect of the denial of Appaloosa's application on the value of the undeveloped portion of the property. As such, we conclude that the trial court made sufficient findings relating to Appaloosa's

7

investment-backed expectations to allow Appaloosa to properly present its case to this Court on appeal.

Character of the Governmental Action

While Appaloosa focuses its challenge of the character of the governmental action on its claims under *Biggar*, which will be addressed in more detail below, we will note here that there was significant evidence presented to support the appropriateness of the character of the City's denial of Appaloosa's zoning application. Neighbors of the property objected to Appaloosa's application on the bases of increased noise, traffic, and crime in their neighborhood; decreased property values; and ill effects from increased urbanization. Such considerations present legitimate reasons for governmental zoning decisions. *See Mayhew*, 964 S.W.2d at 938-39; *Weatherford v. City of San Marcos*, 157 S.W.3d 473, 484 (Tex. App.—Austin 2004, pet. denied).

For the foregoing reasons, we cannot conclude that the trial court erred in entering a take-nothing judgment on Appaloosa's *Penn Central* claims.

*Biggar* Claims

A cause of action exists for inverse condemnation where the government acts to gain an unfair advantage against an economic interest of an owner.[4] *See Biggar*, 873

---

[4] As discussed in footnote 2 above, claims relating to a governmental entity's improper actions have been removed from the takings analysis by the Supreme Court's decision in *Lingle*, 544 U.S. at 543. While the Texas Supreme Court has acknowledged *Lingle* in *Hearts Bluff*, 381 S.W.3d at 478 n.21, it has not specifically addressed the effect of *Lingle* on Texas takings jurisprudence. S*ee Rowlett/2000*, 231 S.W.3d at 594-95 (noting that, in light of *Lingle*, the Texas Supreme Court may need to further consider whether inquiries into the legitimacy of governmental actions have any place in takings jurisprudence). Because the continuing viability of claims under *Biggar* is unclear, in an abundance of precaution, we will address Appaloosa's claims in our analysis.

S.W.2d at 13 (citing *City of Austin v. Teague*, 570 S.W.2d 389, 393 (Tex. 1978)). The reason that such an action is recognized is to prevent the government from adjusting the value of just compensation through regulation and, as such, rendering the constitutional taking clause protection meaningless. *See id.* at 14. The government must act as a neutral arbiter. *See id.* Governmental actions specifically designed to decrease the value of property for the purpose of decreasing the compensation that will be required when the property is subsequently taken gives rise to a claim for inverse condemnation. *See id.*

Appaloosa contends that the City specifically targeted Appaloosa by its zoning determination, and that such targeting can be a factor in a takings claim. *See Hearts Bluff*, 381 S.W.3d at 488. However, we reiterate that the City did not rezone the property or otherwise specifically target the property. Rather, the City simply denied Appaloosa's zoning application when the City received multiple objections from neighboring residents. These objections have been recognized as providing a legitimate basis for governmental zoning decisions. *See Mayhew*, 964 S.W.2d at 938-39; *Weatherford*, 157 S.W.3d at 484.

Appaloosa further contends that other property along the Marsha Sharp Highway and in close proximity to the property has been zoned IHC, which indicates that the City impermissibly sought an unfair economic advantage against Appaloosa. However, Appaloosa fails to point to evidence that would establish sufficient similarities between the properties to lead to an inference that the City's denial of Appaloosa's zoning application was not for a legitimate purpose. In addition, the City points to nearby property, specifically the Ullom tract, that is also zoned residential. Consequently, such

9

comparisons do not give rise to an inference that the City attempted to gain an unfair advantage against Appaloosa in denying its zoning application.

Finally, Appaloosa contends that the trial court's findings that the City's denial of Appaloosa's zoning application is based on concerns of residents that live in the adjacent neighborhood are factually insufficient. For these findings to be factually insufficient, they must be against the great weight and preponderance of the evidence. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). Appaloosa points to a couple of the specific objections of the neighboring residents and then contends that there is evidence in the record that would mitigate these effects. However, the record evidence supports the validity of many of the neighboring residents' concerns, and the record evidence does not establish that these mitigating factors would resolve the neighboring residents' objections. As such, the evidence is factually sufficient to support the trial court's findings that the City's denial of Appaloosa's zoning request was legitimately based on the objections of neighboring residents.

For the foregoing reasons, we cannot conclude that the trial court erred in entering a take-nothing judgment on Appaloosa's *Biggar* claims.

Conclusion

Having found no error in the issues raised by Appaloosa in this appeal, we affirm the judgment of the trial court. *See* TEX. R. APP. P. 43.2(a).

Mackey K. Hancock
Justice

10